IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| EMS-CHEMIE (NORTH AMERICA), INC. | § § § § | |
| *Plaintiff*, | § § | Case No. 3:24-6683-JFA |
| v. | § § § | |
| AVINASH GADKARI | § § | JURY TRIAL DEMANDED |
| *Defendant.* | § § § § | |

**PLAINTIFF'S VERIFIED ORIGINAL COMPLAINT AND
APPLICATION FOR TEMPORARY RESTRAINING ORDER,
PRELIMINARY INJUNCTION, AND PERMANENT INJUNCTION**

Plaintiff EMS-CHEMIE (North America), Inc. ("Plaintiff" or "EMS-CHEMIE" or the "Company"), files this Verified Complaint and Application for Temporary Restraining Order, Preliminary Injunction, Permanent Injunction, monetary damages, attorneys' fees and costs against Defendant Avinash Gadkari ("Defendant" or "Gadkari"), and states as follows:

### I.    INTRODUCTION AND NATURE OF ACTION

1.    Plaintiff EMS-CHEMIE brings this action for injunctive relief, damages and other appropriate relief against its former employee in connection with his misappropriation of Plaintiff's confidential and/or trade secret information.

### II.    THE PARTIES

2.    Plaintiff EMS-CHEMIE (North America), Inc. is a corporation incorporated in South Carolina. EMS-CHEMIE has its principal place of business in Sumter, South Carolina.

1

3.    Defendant Avinash Gadkari is a resident and citizen of Brazoria County, Texas. He may be served with process at his residence, 3047 Newbrook Drive, Pearland, Texas 77584.

### III.    JURSIDCITION AND VENUE

4.    This Court has subject matter jurisdiction over this proceeding pursuant to 28 U.S.C. § 1331, as EMS-CHEMIE asserts claims that arise under the laws of the United States, namely, the federal Defend Trade Secrets Act.

5.    The Court has supplemental jurisdiction over EMS-CHEMIE state-law and common law claims pursuant to 28 U.S.C. § 1367 because those claims are so related to EMS-CHEMIE federal-question claims that they form part of the same case or controversy.

6.    Venue is proper in this Court as the Employment/Confidentiality and Non-Compete Agreement (the "Agreement") at issue, contains a provision providing that "disputes arising out of or relating to this Agreement shall be brought, if at all, in and before a court located in the State of South Carolina to the exclusion of the courts of any other state. I agree that any court located in the State of South Carolina has jurisdiction over me in connection with any such disputes…" Exhibit 1, Declaration of Lee Carthage, Exh. 1-A.

### IV.    FACTUAL BACKGROUND

**A.    EMS-CHEMIE's Business and Gadkari's Employment**

7.    EMS-CHEMIE is a leading producer and supplier of polymers and chemicals. Exh. 1, ¶2. EMS-CHEMIE focuses on producing and marketing specialty polymeric materials. *Id*. The polymeric materials marketed by EMS-CHEMIE are trademarked and federally registered with the US Patent and Trademark Office. *Id*. EMS-CHEMIE develops specific solutions for each of its customers. *Id*.

8.      EMS-CHEMIE is actively growing its oil and gas clientele in Texas, particularly Houston, the oil and gas capital of the world. Exh. 1, ¶3. EMS-CHEMIE has spent considerable effort in growing its business in Houston and does not share this information with competitors. *Id*. As part of this effort, EMS-CHEMIE placed a major emphasis on hiring the Key Account Manager - Industrial and Consumer ("Key Account Manager") in the area. *Id*. In October 2023, EMS-CHEMIE hired Gadkari as the Key Account Manager, earning a base salary of $150,000 with a $50,000 bonus potential. *Id*. Gadkari onboarded in Sumter, South Carolina at EMS-CHEMIE's headquarters, and reported daily to his direct supervisor who was based in Sumter, South Carolina. *Id*.

9.      Gadkari's responsibilities as the Key Account Manager were to focus on growing EMS-CHEMIE's business in specific industries including the oil and gas industry, implement sales plans, develop sales lists and project pipeline, and establish marking, sales, and business plans of current and prospective customers. Exh. 1, ¶4.

10.     As the Key Account Manager, Gadkari actively communicated with EMS-CHEMIE's clients and prospective clients, and had access to EMS-CHEMIE's accounting information, policies and procedures, business dealings, customers identities and contact information, marketing reports, customer needs, pricing arrangements, proposals, pitches, engineering plans and inventions, product formulas and processes, and contact information solely for the benefit of EMS-CHEMIE. Exh. 1, ¶4.

**B.      Confidentiality Agreement Signed by Gadkari**

11.     As a condition of his hire, Gadkari was required to sign the Employment/Confidentiality and Non-Compete Agreement ("Agreement"). Exh. 1, ¶5.

12. The Agreement makes clear that during Gadkari's at-will employment, he would receive knowledge of EMS-CHEMIE's confidential information, which is defined as:

> "CONFIDENTIAL INFORMATION" means all product, market, product sources, raw material recipes and formulas, processes, customer information and contracts, customer lists, computer user identifiers and passwords, and all purchasing, technical, accounting, marketing and other similar information, not generally known and proprietary to EMPLOYER, including but not limited to, information relating to research, development, manufacture or sale of EMPLOYER products, as well as formulas, processes and other information received by EMPLOYER from third parties under an obligation of secrecy. All information disclosed to me or to which I have access during the period of my employment, which I have reasonable basis to believe to be Confidential Information, or which is treated by EMPLOYER as being Confidential Information, shall be presumed to be Confidential Information.

Exh. 1-A, ¶D. Gadkari promised not to improperly retain, use, or disclose Company materials. Exh.1-A, Agreement, p.4.

13. The Agreement further provides a non-competition period for twelve months following Gadkari's termination of employment, including a prohibition not to market, sell, or solicit orders to or from a customer with whom he knew through his employment with EMS-CHEMIE, and a prohibition not to market, sell, or solicit competing products of EMS-CHEMIE. Exh.1-A, Agreement, pp.4-5.

14. Gadkari also agreed not to solicit any EMS-CHEMIE employee or agent to leave their relationship with EMS-CHEMIE. Exh.1-A, Agreement, p.5. Gadkari executed the Agreement on September 8, 2024. Exh.1-A, Agreement.

**C.  Gadkari's Misappropriation That Led to His Termination**

15. Gadkari was issued a Performance Improvement Plan on September 26, 2024 focusing on his need to improve his focus on oil and gas accounts and business. Exh. 1, ¶7.

16.Less than two weeks later, during a routine IT scan, EMS-CHEMIE discovered that Gadkari had uploaded 28.64 GB of confidential company materials to his personal Google Drive account. Exh. 1, ¶7.

17.During a meeting, Gadkari *admitted* that he uploaded the confidential materials, provided EMS-CHEMIE with his password so that it could remove the materials from his Google Drive, and importantly, he *promised* Company representatives that he did not save, upload, or otherwise retain EMS-CHEMIE materials anywhere else and that he did not have possession of any more materials. Exh. 1, ¶8.

18.Gadkari's misappropriation of EMS-CHEMIE's 28.64 GB confidential materials not only breached the Agreement, but he also violated the Company's Handling of Confidential Company Data policy, which Gadkari executed a year before on October 3, 2023. Exh. 1, ¶9. Gadkari also violated the Company's Solicitation or Distribution policy, Misuse of Property policy, Prohibited Uses of Our Systems policies, and Intellectual Property Rights policy, all of which he acknowledged on October 3, 2023. *Id*. Violation of any of these policies calls for immediate termination. *Id*.

19.Because Gadkari admittedly violated his Agreement and numerous Company policies, his employment was terminated on October 17, 2024. Exh. 1, ¶9.

D.**Gadkari's Misappropriation After his Termination**

20.Following the return of Gadkari's work-issued laptop, EMS-CHEMIE conducted an analysis on the laptop. Exh. 1, ¶10. EMS-CHEMIE discovered that contrary to Gadkari's statements that he did not abscond EMS-CHEMIE's confidential materials other than when he uploaded the 28.64 GB to the Google Drive, Gadkari saved EMS-CHEMIE confidential materials to three separate external hard drives and a Microsoft One Drive.

21. Specifically, Gadkari input the following three external hard drives and accessed the Company's confidential information while the drives were in Gadkari's work-issued laptop: (1) SanDisk Cruzer, serial number: 4C530001010523113524, (2) WD My Passport 2626, serial number: WX12A937UF5N, and (3) Seagate Expansion HDD, serial number: 00000000NACSMQ0D. Exh. 1, ¶11, Exh.1-B, Forensics Report. Moreover, at least one folder accessed by Gadkari while the external hard drives were inserted into his work-issued laptop, were confidential materials concerning one of EMS-CHEMIE's most important potential customers.

22. The examination revealed that Gadkari uploaded multiple documents to a Microsoft One Drive on June 30, 2024. Exh. 1, ¶12, Exh. 1-B. The examination also confirmed that Gadkari had contacted one or more of EMS-CHEMIE's competitors for potential future employment. Gadkari worked for EMS-CHEMIE in and around Houston, Texas, had access to EMS-CHEMIE's confidential information through his employment in or around Houston, Texas, misappropriated the confidential information in or around Houston, Texas, and breached the Agreement in or around Houston, Texas.

23. EMS-CHEMIE demanded that Gadkari return the three external hard drives upon which he unlawfully saved the Company's confidential information, provide the BitLocker code to access these external hard drives, and provide all contents from and the login information for his Microsoft One Drive and Google Drive. The Company demanded that he provide these items by November 12, 2024. Exh. 1, ¶13, Exh. 1-C, Letter to Gadkari.

24. On November 12, 2024, Gadkari provided three external drives to a courier to deliver to a forensics examiner retained by EMS-CHEMIE, however, the Seagate Expansion HDD, serial number: 00000000NACSMQ0D, was not one of them. On November 13, 2024, Gadkari

was provided with a consent form for the examiner to analyze his Microsoft One Drive and Google Drive accounts, but as of the filing of this Complaint, has yet to execute the consent form.

## V. CAUSES OF ACTION

### A. Misappropriation of Trade Secrets (18 U.S.C. § 1836, et seq.) ("DTSA")

25. EMS-CHEMIE incorporates by reference each and every allegation of Paragraphs 1 through 24 as if fully set forth herein.

26. While working for EMS-CHEMIE, Gadkari was given access to and used EMS-CHEMIE's trade secrets. At its great expense, EMS-CHEMIE developed and compiled its trade secret information. EMS-CHEMIE has kept its trade secret information confidential, and it is not generally known in the industry or in the public. EMS-CHEMIE's trade secrets and confidential information have actual and potential value to third parties, particularly to direct competitors.

27. EMS-CHEMIE has taken reasonable steps to maintain the confidential nature of its information. For instance, it requires key employees to execute Agreements.

28. Gadkari has maliciously and willfully misappropriated trade secrets by wrongfully compiling and then absconding with trade secret information belonging to EMS-CHEMIE, for his unauthorized benefit and use and potentially the unauthorized benefit and use of others. Gadkari retained and/or used Gadkari's trade secrets in violation of contractual and fiduciary obligations to EMS-CHEMIE.

29. The actions of Gadkari in converting and misappropriating EMS-CHEMIE's confidential trade secrets for his own gain were willful, wanton, and malicious, and were taken with reckless disregard for EMS-CHEMIE's rights.

30. As a direct and proximate result of Gadkari's violation of the Defend Trade Secrets Act of 2016, EMS-CHEMIE has suffered injury, for which it seeks all remedies provided by law,

7

including actual damages, attorney fees, punitive damages, disgorgement, restitution, unjust enrichment, costs, and interest.

31. The actions of Gadkari have also caused and will continue to cause EMS-CHEMIE irreparable harm if not immediately and permanently enjoined. EMS-CHEMIE has no adequate remedy at law. EMS-CHEMIE will seek injunctive relief to prevent the continued possession, disclosure or use of its trade secrets.

**B.    Misappropriation of Trade Secrets (Tex. Civ. Prac. & Rem. Code § 134A.001, et seq.) ("TUTSA")**

32. EMS-CHEMIE incorporates by reference each and every allegation of Paragraphs 1 through 31 as if fully set forth herein.

33. In connection with his employment, EMS-CHEMIE provided Gadkari access to valuable and confidential trade secrets. Given the importance of the trade secrets to EMS-CHEMIE, it was maintained with the highest degree of security pursuant to the company's procedures and practices.

34. Gadkari has maliciously and willfully misappropriated trade secrets in Texas by wrongfully compiling and saving trade secret information belonging to EMS-CHEMIE, for his unauthorized benefit and use and/or the unauthorized benefit and use of others, particular competitors. Gadkari retained EMS-CHEMIEs' trade secrets in violation of contractual and fiduciary obligations to EMS-CHEMIE.

35. Gadkari's misappropriation of EMS-CHEMIE's trade secrets has caused EMS-CHEMIE substantial injury, for which it seeks all remedies provided by law, including actual damages, attorney fees, punitive damages, disgorgement, restitution, unjust enrichment, costs, and interest.

36. Because EMS-CHEMIE has no adequate remedy at law, EMS-CHEMIE seeks injunctive relief to prevent further harm.

**C.     Breach of Contract**

37. EMS-CHEMIE incorporates by reference each and every allegation of Paragraphs 1 through 36 as if fully set forth herein.

38. Gadkari and EMS-CHEMIE entered into the aforementioned valid and enforceable Agreement. EMS-CHEMIE has performed its obligations under the terms of the Agreement by sharing its confidential information with Gadkari and by complying with the terms of the Agreement. All conditions precedent (if any) to enforcement of Gadkari's agreement with EMS-CHEMIE have been satisfied.

39. In the Agreement, Gadkari promised to hold in confidence and not use, disclose, or allow disclosure of confidential information, as defined therein, except in the proper performance of his duties to EMS-CHEMIE.

40. Gadkari is in breach of the Agreement by using and saving to his Google Drive, Microsoft One Drive, and three external hard drives the Company's confidential, proprietary and/or trade secret information as defined therein for use while employed by EMS-CHEMIE. Gadkari's actions constitute a breach of his obligations under the Agreement with EMS-CHEMIE.

41. Gadkari's breach has caused EMS-CHEMIE irreparable harm and damages, and will continue to do so unless immediately restrained from further breaches of the Agreement.

**D.     Breach of Fiduciary Duties**

42. EMS-CHEMIE incorporates by reference each and every allegation of Paragraphs 1 through 41 as if fully set forth herein.

43. During his employment by EMS-CHEMIE, Gadkari occupied a position of special confidence and trust with EMS-CHEMIE. Gadkari had access to and was given confidential, proprietary, and/or trade secret information about EMS-CHEMIE. As such, Gadkari owed fiduciary obligations to EMS-CHEMIE both during and after his employment, including duties of good faith, honesty, and loyalty.

44. Gadkari breached his fiduciary obligations by misappropriating and disclosing confidential trade secret material for Gadkari's benefit.

45. Therefore, EMS-CHEMIE is entitled to its actual, compensatory damages and exemplary damages.

46. Gadkari's breach has caused EMS-CHEMIE irreparable harm and damages, and will continue to harm EMS-CHEMIE unless immediately restrained from further breaches of his fiduciary duties.

## VI.     APPLICATION FOR TRO AND INJUNCTIONS

47. EMS-CHEMIE incorporates by reference each and every allegation of Paragraphs 1 through 46 as if fully set forth herein.

48. Gadkari's conduct is wrongful because he has willfully violated his contractual obligations, and he has misappropriated confidential and/or trade secret information.

49. Should Gadkari's conduct go unabated, he could cause EMS-CHEMIE's customers to sever their relationships or potential relationships with EMS-CHEMIE, and reveal EMS-CHEMIE's confidential and/or trade secret information to disadvantage EMS-CHEMIE.

50. Additionally, Gadkari's breach of his legal obligations will continue to cause irreparable harm to EMS-CHEMIE for which there is no adequate remedy at law, including,

without limitation, loss of existing customers, loss of business opportunities, and the sharing of confidential formulas and pricing strategies. Such harm is not readily reduced to dollar damages.

51. There is a substantial likelihood that EMS-CHEMIE will prevail on the merits. Gadkari -*admittedly* - has violated the terms of the Agreement by retaining EMS-CHEMIE's confidential information and likely using it to gain employment at a competitor and share EMS-CHEMIE's confidential information for his benefit of a competitors' benefit.

52. EMS-CHEMIE seeks a temporary restraining order until a date set for hearing (not to exceed fourteen days from the date of the order) and, after notice and a hearing, a preliminary injunction preventing Gadkari from further breach of his obligations and further misappropriation of EMS-CHEMIE's trade secrets and confidential information until a hearing on the merits.

53. The threatened injury to EMS-CHEMIE outweighs any possible damage to Gadkari because an injunction would simply require Gadkari to abide by his obligations under the Agreement and/or state and federal law, and would require Gadkari not to utilize or share that confidential material (particularly with competitors).

54. The public interest is served by an injunction, which would protect EMS-CHEMIE's confidential information and goodwill.

55. Based on the foregoing paragraphs, EMS-CHEMIE requests that this Court:

   i. Issue a temporary restraining order requiring Gadkari, within 48 hours, to return all confidential, proprietary, and trade secret information belonging to EMS-CHEMIE that is still within his possession, custody, or control, including but not limited to all information, files, and records that pertain to EMS-CHEMIE's business, customers, pricing, bids, and projects;
   ii. Issue a temporary restraining order requiring written certification from Gadkari that he has retained no other documents, computer media, device, storage media, or files containing EMS-CHEMIE information;
   iii. Issue a temporary restraining order prohibiting Gadkari from directly or indirectly engaging in any use or disclosure of confidential information belonging to EMS-CHEMIE, to himself or any third party, which includes trade secrets and other information that have been developed or used and/or

      will be developed or used by or for the benefit, or at the expense, of EMS-CHEMIE, that cannot be obtained readily by third parties from outside sources, in whatever form, tangible or intangible;

   iv. Issue a temporary restraining order requiring that Gadkari abide by the terms of the Agreement, specifically with respect to the nondisclosure of EMS-CHEMIE confidential and/or trade secret information;

   v. Issue an Order requiring Gadkari to make available, within 48 hours, for forensic imaging the contents of the any file-hosting, sharing, or storage accounts and the physical electronic devices, including the three external hard drives containing material relating to, belonging to, or obtained from EMS-CHEMIE, including but not limited to the following:

1. SanDisk Cruzer, serial number: 4C530001010523113524;
2. WD My Passport 2626, serial number: WX12A937UF5N;
3. Seagate Expansion HDD, serial number: 00000000NACSMQ0D;
4. Log in and BitLocker passcode information to access the above three external hard drives;
5. Log in and passcode information for an examiner to examine Gadkari's Microsoft One Drive; and
6. Log in and passcode information for an examiner to examine Gadkari's Google Drive.

   vi. Issue a preliminary injunction enjoining and restraining Gadkari from the conduct set forth in Paragraphs (1) and (4) above pending final determination of this matter at trial; and

   vii. Issue a permanent injunction enjoining and restraining Gadkari from the conduct set forth in Paragraphs (1) and (4) above.

## VII. ATTORNEY'S FEES

56. EMS-CHEMIE is entitled to recover reasonable and necessary attorneys' fees under 18 U.S.C. § 1030, Tex. Civ. Prac. & Rem. Code § 134A.001, and 18 U.S.C. § 1836.

## VIII. JURY DEMAND

57. EMS-CHEMIE demands a jury.

## IX. RELIEF REQUESTED

58. EMS-CHEMIE prays judgment in its favor and against Gadkari for: temporary, preliminary, and permanent injunctive relief, and for damages as are fair and reasonable, including actual damages, punitive damages, equitable relief, pre-judgment and post-judgment interest,

costs, and attorneys' fees, and for such other and further relief as the Court may deem just and proper.

                Respectfully submitted,

                FISHER & PHILLIPS LLP

By:   s/ George A. Reeves III
       George A. Reeves III (FID #9701)
       greeves@laborlawyers.com
       Fisher & Phillips LLP
       Post Office Box 11612
       Columbia, South Carolina 29211
       Telephone: (803) 255-0000

                **ATTORNEYS FOR PLAINTIFF**

Dated this 20th day of November, 2024.